**SIGNED this 12th day of July, 2022**

*[signature]*
Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

[This opinion is not intended for publication as the precedential effect is deemed limited.]

In re:

**Ashley Renae Cable,**

    **Debtor.**

No. 1:21-bk-11979-SDR

Chapter 13

## MEMORANDUM OPINION

### I. INTRODUCTION

Debtor Ashley Cable ("Ashley") seeks relief from a confirmation order of her plan, which provided for satisfaction of the debt owed by her husband Cory Cable ("Cory") to Southern Heritage Bank. That debt is secured by property located at 28374 Highway 95 N in Greenback, Tennessee (the "Cable Farm"). Ashley's husband is a joint owner of the Cable Farm. Renasant Bank (the "Bank") now holds the Southern Heritage debt and objects to the relief. Ashley and the Bank had entered into an agreed order (the "Agreed Order") that terminated the stay as to the Cable Farm on June 6, 2022 if the debt was not paid. Ashley failed to satisfy the Bank's debt, and a foreclosure is set for July 13, 2022. Ashley seeks the imposition of an injunction to prevent the foreclosure.

The Court must consider, if Ashley wants to impose the stay again, can she do so by motion in a contested matter, or must she commence an adversary proceeding? After reviewing the parties' papers and holding a hearing on July 12, 2022, the Court has concluded that the relief that Ashley seeks would require an adversary proceeding. Accordingly, and as explained below, the Court will use its *sua sponte* authority to convert Ashley's motion and amended motion to impose the stay (Doc. Nos. 68, 75)[1] into an adversary proceeding on a temporary basis, to allow her to commence a formal adversary proceeding. The Court also will grant a preliminary injunction against the Bank on the terms and conditions explained below.

## II. BACKGROUND

On August 16, 2017, Cory borrowed $258,184.82 from the Bank and signed a promissory note that would mature in 2024. (Doc. No. 26-1 at 2.) The loan was secured by the Cable Farm. A Deed of Trust and Assignment of Rents were recorded in Loudon County on August 23, 2017. (Doc. No. 26-2 at 2; Doc. No. 26-3 at 2.) On February 8, 2019, Cory transferred his exclusive interest in the farm to himself and Ashley, as joint tenants, by quitclaim deed. (Doc. No. 26-7 at 2.) Cory then filed his bankruptcy case on March 9, 2020. In turn, Cory and Ashley converted their joint tenancy to a tenancy in common by adding Cory's mother, Linda Cable Cheatham ("Linda"), as an owner of the Cable Farm through a quitclaim deed signed on March 18, 2021. (Doc. No. 26-7 at 4.) Ashley filed her bankruptcy case on October 28, 2021.

While Ashley's proposed plan was proceeding to confirmation, the Bank filed a motion for relief from the automatic stay. (Doc. No. 26.) Cory, who had filed and confirmed a Chapter 12 plan of his own (*In re Cory Cable*, No. 1:20-bk-10924-NWW), stopped making required payments

---

[1] All references are to the docket in this case unless otherwise indicated.

2

on the loan in early 2021, and the Bank asserted a material default. The motion was resolved through the Agreed Order, which the Court signed on February 11, 2022. (Doc. No. 55.) Among other provisions in the Agreed Order, Ashley agreed to submit an amended plan that included a special provision that she would pay the Bank in full within 20 days of confirmation. The amended plan was confirmed on April 25, 2022. (Doc. No. 64.) The Agreed Order also contained the following two paragraphs that are central to Ashley's pending motions:

> If at any time Debtor defaults under this Ashley Cable Agreed Order, which defaults include but are not limited to (i) failure to pay the balance owed on the [promissory note] within twenty (20) days of confirmation of Ashley Cable's confirmed Chapter 13 Plan . . . Renasant shall file with the Court via electronic means a Notice of Default notifying Debtor and her attorney of the default under this Ashley Cable Agreed Order.
>
> If Debtor fails to cure the default within twenty (20) calendar days after the filing of the written notice, the automatic stay imposed under 11 U.S.C. § 362(a) shall terminate immediately as to the Property without further order of this Court. Upon the termination of automatic stay, Renasant shall be authorized to take such action with regard to the Property as is permitted under the Loan Documents and applicable State law without further order of this Court.

(Doc. No. 55 at 10.)

The Bank's assertion of a breach of the Agreed Order led directly to Ashley's pending motion. On May 17, 2022, the Bank filed a Notice of Default as permitted under the Agreed Order. (Doc. No. 66.) The Bank asserts that Ashley did not cure the default within 20 days after filed the notice, meaning that the automatic stay terminated. Ashley filed her original motion to impose the stay on July 6, 2022 (Doc. No. 68), claiming that the Bank scheduled a foreclosure on the farm for July 13, 2022. Ashley concedes that the Bank was not paid as required in the special provision of the confirmed plan. Nonetheless, Ashley asserts that she and Cory have two sources of future funds that can pay the Bank in full without the need to foreclose on the farm. The Cables recently acquired a house (the "Cheatham House") and approximately 10 acres from Linda. Cory testified

3

at the hearing that he has an offer of $850,000 from an unrelated third party that he intends to accept. That sale must close by August 12, 2022. Additionally, Cory testified that approximately $600,000 worth of crops in the field are expected to be harvested from September to December 2022. The Cables have offered to pledge the crops to the Bank as additional security for the debt.

The Bank filed its objection to Ashley's original motion on July 7, 2022. (Doc. No. 73.) The Bank's counsel argued that it has repeatedly negotiated with both Cables in good faith only to have the Cables file additional proceedings to delay a foreclosure. Although costs are mounting, there is no dispute that the value of the Cable Farm exceeds the total amount of the debt plus the accrual of fees and expenses.

On July 8, 2022, Ashley filed her amended motion for a stay. (Doc. No. 75.) The amended motion is identical to the first motion in all substantive respects. The only difference is procedural: Ashley asserts in the amended motion that she seeks for relief under Bankruptcy Rule 9024 and Civil Rule 60.

At the hearing, the Court learned additional information that is relevant to the pending motions. Procedurally, Ashley clarified that she seeks relief specifically under Civil Rule 60(b)(6). On substance, the Cables explained by attorney proffer and through Cory's testimony that they were unable to fulfill the terms of the Agreed Order for several reasons: A sale for $300,000 of some of their land across the street from the Cable Farm fell through after confirmation; they encountered problems with their farm equipment that required expensive repairs; they were unable to obtain any credit for seed and fertilizer, requiring them to use cash; and finally, with some funds that they did have available, they chose to pay off liens on farm equipment rather than pay the Bank.

4

The Court finds that the plan proposal was made in good faith, even though it was overly optimistic. In addition, the Cables are now offering to pay off the Bank's debt, as provided in the plan, from another source in short order. The Cables also are offering to provide a lien against the proceeds from their crops, which is where they used their cash. In addition to the contract for the house, the family owns an additional five-acre parcel that they expect to sell for approximately $150,000. As for crops in the field, Cory testified that a conservative estimate of their value would be around $450,000–$500,000, though he expects their value to approach $800,000. The crops are growing in part on land that the Cables are leasing, but the crops are not otherwise encumbered and could be pledged as additional collateral.

### III. DISCUSSION

Before addressing the substance of Ashley's motion, the Court needs to address the procedure that she has used to seek relief. Ashley filed her motion under Bankruptcy Rule 9024, which incorporates Civil Rule 60, but she did not specify in her papers whether she is invoking Civil Rule 60(a) or 60(b). Only at the hearing did counsel make a specific reference to Civil Rule 60(b)(6). "The basic purpose of [Civil Rule 60(a)] is to authorize the court to correct errors that are mechanical in nature that arise from oversight or omission. Clerical mistakes include those made by judges as well as ministerial employees. The rule does not, however, authorize the court to revisit its legal analysis or otherwise correct an error of substantive judgment." *Pruzinsky v. Gianetti (In re Walter)*, 282 F.3d 434, 440 (6th Cir. 2002) (internal quotation and editorial marks and citations omitted). Neither Ashley's motion nor the additional information obtained at the hearing presents any need to correct a ministerial error in the Agreed Order. Civil Rule 60(a), therefore, would not apply here.

5

As for Civil Rule 60(b), that portion of the rule creates six categories of grounds for relief from a final order:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). All of these grounds have in common the attempt "to balance the interest in the stability of judgments with the interest in seeing that judgments not become instruments of oppression and fraud." 10 *Collier on Bankruptcy* § 9024.03 (16th ed. and 2022 Supp.); *see also Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1196 (10th Cir. 2003) (describing Civil Rule 60(b) as "the familiar choice between finality and accuracy"); *Charter Twp. of Muskegon v. City of Muskegon*, 303 F.3d 755, 760 (6th Cir. 2002) ("The general purpose of Rule 60(b) is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done.") (internal quotation and editorial marks and citations omitted). Civil Rule 60(b)(6) in particular "should apply only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule. Courts, however, must apply subsection (b)(6) only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (internal quotation marks and citations omitted). Ashley has

not cited to any extraordinary facts or circumstances surrounding the Agreed Order that would render that order an injustice if left undisturbed. Additionally, the terms of the Agreed Order have run their course. Under the terms of the Agreed Order, Ashley failed to make certain payments; the Bank filed a Notice of Default; the cure period ended; and the stay lifted automatically. At that point, the Agreed Order terminated because its terms were no longer in effect. If at least some aspect of the Agreed Order were still operative and could be revisited through new evidence or significantly changed circumstances then relief under Civil Rule 60(b) might have been possible. *See State Bank of So. Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070, 1081 (10th Cir. 1996) (affirming a Civil Rule 60(b) order vacating and order lifting the automatic stay, "under the exceptional circumstances of this case"). No aspect of the Agreed Order is still operative, though, meaning that Ashley's motion is a request for new relief and not a request to revise the Agreed Order. *Cf. In re Robinson*, 427 B.R. 412, 414 (Bankr. W.D. Mich. 2010) (adversary proceeding required to impose the stay for a repeat filer, where the 30-day period under 11 U.S.C. § 362(c)(3)(B) expired and the debtor effectively was seeking a new stay). Neither does any statute explicitly permit a motion for the type of relief that Ashley seeks. *See In re Reed*, 370 B.R. 414, 418 (Bankr. N.D. Ga. 2006) (effectively disagreeing with *Robinson* and finding that "the matters considered in issuing an injunction are effectively subsumed in the determination under Section 362(c)(3)(B)," meaning that an expired stay could be imposed again by motion). Civil Rule 60(b), therefore, also does not apply to Ashley's situation.

Without Bankruptcy Rule 9024 and Civil Rule 60 available to her, Ashley will need to seek her requested relief through an adversary proceeding. Bankruptcy Rule 7001(7) requires an adversary proceeding "to obtain an injunction or other equitable relief." Fed. R. Bankr. P. 7001(7).

"If a litigant asks the Court to enjoin an opposing party from doing anything or asks the Court to order it to take a particular action, Rule 7001(7) requires the filing of an adversary proceeding." *In re Murray Energy Holdings Co.*, ___ B.R. ___, No. 19-56885, 2022 WL 2387801, at *20 (Bankr. S.D. Ohio July 1, 2022) (internal quotation and editorial marks and citations omitted). Here, the terms of the Agreed Order have operated to give the Bank the right to foreclose on the Cables' farm. Ashley now is asking the Court to enjoin the Bank from doing something that it currently is permitted to do. That kind of request fits the definition of injunctive relief. "The court recognizes that requiring an adversary proceeding before awarding any injunctive relief adds expense and delay, but believes these consequences flow from a natural reading of the court's rules and the Bankruptcy Code." *Robinson*, 427 B.R. at 414.

Although Ashley should have commenced an adversary proceeding with appropriate expedited motions for the relief that she seeks, the Court has an additional source of authority that it can use to maintain the status quo pending further proceedings. The Court has *sua sponte* authority under 11 U.S.C. § 105(a) to convert a contested matter into an adversary proceeding. *See In re Landmark Fence Co., Inc.*, No. EDCV 16-1538 JGB, 2018 WL 4735709, at *11 (C.D. Cal. Sept. 28, 2018) (citations omitted), *aff'd*, 804 F. App'x 681 (9th Cir. 2020); *Wilborn v. Wells Fargo Bank (In re Wilborn)*, 401 B.R. 872, 892 (Bankr. S.D. Tex. 2009) (citations omitted); *see also Williams v. Jeffcoat (In re Williams)*, No. 96-37172-WHB, 1997 WL 252649, at *1 (Bankr. W.D. Tenn. Apr. 24, 1997) (conversion completed *sua sponte* "but with consent of counsel"). A *sua sponte* conversion will not prejudice any party as long as the Court issues an order that gives sufficient notice of the conversion before proceeding to substantive relief. This Order will serve that purpose. The Bank is a sophisticated institutional party that knows Ashley's history well and

already is aware that Ashley is seeking to extend the stay. The Bank appeared at the hearing and opposed the relief requested. The Bank would not suffer prejudice if the Court converted Ashley's motion to an adversary proceeding.

The final issue that the Court has to consider is the basis for continuing tomorrow's foreclosure, however briefly. Section 105(a) allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "When issuing a preliminary injunction pursuant to its powers set forth in section 105(a), a bankruptcy court must consider the traditional factors governing preliminary injunctions issued pursuant to Federal Rule of Civil Procedure 65." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992) (citation omitted). The general standard for a preliminary injunction is well known. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *see also* Fed. R. Bankr. P. 7065. As in all applications for preliminary injunctions, "the four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). The Sixth Circuit has emphasized the flexibility of the four factors by noting that, as an alternative if circumstances warrant, courts may relax the need for likelihood of success by showing that "the merits present a sufficiently serious question to justify further investigation." *Id.* at 1230; *see also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) ("In order to establish

9

a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success. However, it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.") (citing *Delorean*). In the specific context of bankruptcy cases, some courts have adapted the injunction standard and have issued injunctions under 11 U.S.C. § 105(a) when debtors could show a likelihood of a successful reorganization and irreparable harm if collateral litigation undermined a proposed plan. *See In re Excel Innovations, Inc.*, 502 F.3d 1086, 1095 (9th Cir. 2007) ("We hold that a debtor seeking to stay an action against a non-debtor must show a reasonable likelihood of a successful reorganization."); *accord In re W.R. Grace & Co.*, 386 B.R. 17, 33 (Bankr. D. Del. 2008); *In re Archambault*, 174 B.R. 923, 935 (Bankr. W.D. Mich. 1994).

Here, Ashley has demonstrated the prospect of irreparable harm with the loss of the Cable Farm and, along with that, her source of income. A foreclosure of the farm not only would eliminate the crops as a potential source of future income but effectively would end the Cables' livelihood. While the Cables have made promises before that they could not fulfill, a drastic end to their attempts to reorganize seems unnecessary when they have a written contract in place to sell the Cheatham House within the next month for an amount of money in excess of the Bank's claim. The prospect of the house sale greatly increases the chances that Ashley can pay the Bank in full and fund her plan. That would still leave the Cable Farm and the crop proceeds available to address any other concerns of the Bank. Those concerns relate to a debt that resulted from a failed restaurant business obligation that is addressed in Cory's Chapter 12 plan, which the parties referred to as the "Moe's Debt."

10

The public interest is a negligible factor in this case, but the balance of the equities currently tips in Ashley's favor. "Where plaintiff and defendant present competing claims of injury, the traditional function of equity has been to arrive at a nice adjustment and reconciliation between the competing claims. In such cases, the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "During the balancing phase of the preliminary injunction analysis, the goal of the court is to choose the course of action that minimizes the costs of being mistaken. To do so, the court must compare the potential irreparable harms faced by both parties to the suit—the irreparable harm risked by the moving party in the absence of a preliminary injunction against the irreparable harm risked by the nonmoving party if the preliminary injunction is granted." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008) (citation omitted), *abrogated in part on other grounds by Winter*. At the hearing, the Court cautioned the Cables that they have made promises before that they could not fulfill and that each broken promise tips the scales more in the Bank's favor. Nonetheless, even the Bank conceded at the hearing that a short delay would do no more harm to it than an increase in legal and administrative expenses, which are secured by collateral worth at least two times the amount of its total debt. On the other hand, forcing a foreclosure now would end the Cables' livelihood and eliminate a significant chance to repay the Bank and to pay all of Ashley's creditors in full. Given how differently a foreclosure would affect each side at this point, Ashley should be given a chance to bring to fruition the written contract to sell the Cheatham House.

11

Injunctive relief thus is appropriate, subject to several limitations that will strike an appropriate balance between the expedited nature of the proceedings so far, the notice that the Bank already has received, and the distinction between contested matters and adversary proceedings. The Court will temporarily convert the pending motions into an adversary proceeding, but Ashley will have 10 days from entry of the accompanying order to convert this matter into a formal adversary proceeding to impose the stay by filing an adversary proceeding. As announced at today's hearing, the Court will enjoin the Bank from proceeding with its foreclosure sale on July 13, 2022 but will not require the Bank to cancel the foreclosure. The Bank is permitted to attend the sale and to announce a continuance of the foreclosure to a date certain after August 17, 2022, which should allow enough time for the sale of the Cheatham House to close by August 12, 2022. There is the additional problem that, with Linda having deeded the house to be sold to both Cables, the house at least arguably is property of one or more bankruptcy estates. Within seven days of entry of the accompanying order, the Cables must file whatever motions are necessary in their respective bankruptcy cases to obtain permission to proceed with the scheduled sale. In the motions, the Cables must provide for the payment of any duly recorded liens, real estate taxes, closing costs, and authorized real estate commissions; they also must provide for the payment of the Renasant Bank debt provided for in Ashley's plan at closing, with the remaining proceeds to be held in the Trust Account of Ashley's attorney pending further orders of this Court. The Court will hold a hearing on the need for a further extension of an injunction on **August 16, 2022 at 2:00 PM ET**, in Courtroom A of the Historic U.S. Courthouse, 31 East 11th Street, Chattanooga, TN 37402-2722.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court will use its *sua sponte* authority to convert Ashley's motions (Doc. Nos. 68, 75) temporarily into an adversary proceeding. The Bank's foreclosure will be enjoined at least through August 17, 2022, pending the filing of a formal adversary proceeding with all necessary motions; and pending a further hearing.

A separate order will follow.

* * *